**Affirmed and Memorandum Opinion filed June 27, 2019.**



In The

# Fourteenth Court of Appeals

---

### No. 14-17-00878-CR
### No. 14-17-00879-CR

---

### KRISTI RHODES DE LA GARZA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court No. 2
Galveston County, Texas
Trial Court Cause Nos. MD-0365735 and MD-0365736**

---

## M E M O R A N D U M   O P I N I O N

In this consolidated appeal of convictions for two offenses that were tried together, appellant Kristi Rhodes de la Garza asks us to reverse her convictions for driving while intoxicated and possession of less than twenty-eight grams of alprazolam, a substance in Penalty Group 3. Because the evidence supports the jury's findings that appellant is guilty of both offenses, we affirm the judgments of conviction.

# I. BACKGROUND

At around 1:30 p.m. on May 25, 2016, Trooper Morgan Pack of the Texas Department of Public Safety's Highway Patrol Division received a dispatch that a citizen had expressed concern about a vehicle. Pack located the vehicle on Interstate 45 and observed the car traveling below the speed limit, swerving both within its lane and onto the right shoulder, and nearly striking two vehicles. Pack turned on the patrol car's emergency lights and followed as the car exited the freeway without signaling. The car pulled into a parking lot but continued slowly rolling through the lot until Pack activated his patrol car's siren.

When Pack approached the vehicle, he saw that appellant had constricted pupils. Appellant commented that she shouldn't have been driving and that she was just trying to make it home. Pack described her speech as soft and slurred.

Pack administered several field-sobriety tests, including a horizontal gaze nystagmus test, a walk-and-turn test, and a one-leg stand. Appellant performed poorly on all of the tests, giving six out of a possible six "clues" of intoxication on the nystagmus test, six out of a possible eight clues of intoxication on the walk-and-turn test, and two out of a possible four clues of intoxication on the one-leg stand. At some point, appellant stated that she had taken half of a Vicodin tablet that morning.

Pack arrested appellant for driving while intoxicated, an offense for which she has a previous conviction. During an inventory search of appellant's vehicle, Pack found hydrocodone (Vicodin) and alprazolam (Xanax) in an Altoids mint tin. Appellant also had hydrocodone in a properly labeled prescription bottle. Although there was no labeled prescription bottle of alprazolam, Pack found more alprazolam in a medication bottle labeled zolpidem tartrate (Ambien). Appellant therefore was

2

additionally charged with possession of less than twenty-eight grams of a controlled substance, namely alprazolam. The two charges were tried together.

Appellant had consented to a blood draw when she was arrested, and forensic chemist Daniel Rios, who analyzed appellant's blood sample, testified that her blood contained alprazolam at a concentration of .10 mg/l. Rios stated that the therapeutic range for alprazolam would be .02–.06 mg/l for treatment of general anxiety, and up to .10 mg/l for treatment of panic attacks. Appellant's blood also contained hydrocodone at a concentration of .02 mg/l, and Rios testified that the therapeutic range for hydrocodone is about .02 or .04 mg/l. Rios explained that alprazolam is a central nervous system depressant—a "sedative-type drug"—that can produce dizziness, sleepiness, disorientation, "clouded thinking," and increased reaction time. The narcotic painkiller hydrocodone also is a central nervous depressant. Rios explained that combining the drugs, particularly if the person taking the drugs already is tired, will accentuate the effects of both drugs. He stated that even low concentrations of these drugs could be impairing, so they are labeled with a warning for the patient not to drive or operate heavy machinery until the patient knows how the drugs will affect the person's body. Although Rios stated that the combination of the two drugs at the concentrations found in appellant's blood could cause a person to lose the normal use of the person's mental and physical faculties, he stated that different bodies will respond to the drugs differently, so a blood test alone cannot establish that a person is intoxicated.

Appellant testified that she was prescribed hydrocodone for pain because she has no cartilage between two of her vertebras. She stated that she was last prescribed alprazolam in November of 2015 because she had not gotten over her mother's death four years earlier when her husband left her in 2015, and she added "I was just a mess and I'm a nervous person, anyway."

3

Appellant testified that at the time of her arrest, she had been staying at the hospital where her fiancé was in intensive care after being electrocuted. She stated that on the day of her arrest, she had taken one-half of a hydrocodone pill before dawn but had last taken alprazolam around 8:00 p.m. on the preceding night. She said that on her way home from the hospital that day, "I started to see that I was swerving and I felt that I was a danger to myself and others, so I pulled over not realizing that [Trooper Pack] was behind me already." She agreed that it was common for her to drive below the speed limit and that she is not very coordinated. Having seen the videotape Pack made while following her, appellant asked if she thought the way she was driving was safe. She responded, "No, sir. I didn't realize it was that bad; but no, sir." She said she was almost certain that Pack's emergency lights had not been on, but if they were on, she didn't notice because "I was busy concentrating on my driving because I realized I wasn't doing a good job." When asked if the combination of her lack of sleep and her medication could have affected the normal use of her mental and physical faculties on the day of her arrest, she said, "I didn't realize it had until I had to pull myself over."

Appellant also produced records from a pharmacy showing that she had received forty-five alprazolam pills in October 2015 and another forty-five in November 2015. She stated that she still had the pills because she had stopped taking them and the pills did not need to be discarded until November 2016, but when her fiancé was electrocuted in May 2016, she needed to take them again. When asked why her alprazolam was not in a prescription bottle, appellant said, "Well, since I had been at the hospital, I—you know, my two blood pressure medications, my pain—it would have been like a big bag, and I didn't want to take it all out any time that I was going to take something."

4

The jury convicted appellant of both offenses. For the offense of driving while intoxicated, the jury assessed as punishment 180 days' confinement and a fine of $1,000. For the possession conviction, the jury assessed a suspended sentence of 365 days' confinement, and community supervision imposed for twenty-four months. Appellant appeals both convictions.[1]

## II. CHALLENGE TO THE INTOXICATION CONVICTION

In her first issue, appellant challenges the legal and factual sufficiency of the evidence supporting her conviction for driving while intoxicated. Because the Court of Criminal Appeals abolished factual-sufficiency review "in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt," we review the evidence only for legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

In determining whether the evidence is legally sufficient to support the conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidence's weight and credibility. *See Brooks*, 323 S.W.3d at 899.

---

[1] Appellate cause number 14-17-00878-CR is an appeal from the conviction in trial court cause number MD-0365736 for driving while intoxicated, and appellate cause number 14-17-00879-CR is an appeal from the possession conviction in trial court cause number MD-365735.

A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). "Intoxicated" is defined to include "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A). Appellant contends that the evidence is legally insufficient to support her conviction for driving while intoxicated because (a) "[a]ppellant testified that she was having the normal use of her mental and physical faculties when she became aware of her fatigue and left the roadway of her own volition"; and (b) Rios "stated that he could not definitively say that Alprazolam and Hydrocodone in Appellant's system could cause impairment." The record contradicts both of these statements.

Appellant did not merely admit that taking these medications *could* affect her; she said, "I didn't realize *it had* until I *had* to pull myself over." By her own admission, she pulled over because "I started to see that I was swerving and I felt that I was a danger to myself and others." Moreover, she admitted that even this was an underestimation of her impairment, stating that, until she watched the video, "I didn't realize it was that bad."

As for Rios, he was asked if alprazolam and hydrocodone, in the levels found in appellant's blood, could cause someone to lose the normal use of their mental faculties. He answered, "Yes, it could." When asked if this combination, at these concentrations, could cause a person to lose the normal use of their physical faculties, he again responded, "It could."

Because there is legally sufficient evidence that the medication could and did cause appellant to lose the normal use of her mental and physical faculties, we

6

overrule appellant's first issue and affirm her conviction for driving while intoxicated.

### III. CHALLENGE TO THE POSSESSION CONVICTION

In her second issue, appellant contends that her possession of alprazolam was not an offense because she possessed the drug pursuant to a "prescription exception," and no rational jury could conclude otherwise. Specifically, appellant argues that no rational jury could conclude she was not an "ultimate user" as defined by the Texas Controlled Substances Act, because she "testified and provided past documentation of valid prescriptions." An "ultimate user" is "a person who has lawfully obtained and possesses a controlled substance for the person's own use, for the use of a member of the person's household, or for administering to an animal owned by the person or by a member of the person's household." TEX. HEALTH & SAFETY CODE ANN. § 481.002(48). A person is in "lawful possession" of a controlled substance if it was "obtained in accordance with state or federal law." *Id.* § 481.002(24). Under the Texas Controlled Substances Act,[2] alprazolam is a substance in "Penalty Group 3."[3] A person commits the offense of possession of a substance in Penalty Group 3 if the person knowingly or intentionally possesses the substance, "unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." *Id.* § 481.117(a).

Appellant introduced records from a pharmacy showing that she received forty-five tablets of alprazolam on October 23, 2015, and another forty-five tablets on November 23, 2015. Appellant was found in possession of more than forty-five

---

[2] TEX. HEALTH & SAFETY CODE ANN. §§ 481.001–.354.

[3] *See id*. § 481.104(a)(2).

tablets, so if the drugs were those for which she had pharmacy records, then she would at one time have had two prescription bottles properly labeled for alprazolam. But, none of the alprazolam in appellant's possession were in such a container.

Appellant testified that if she had kept the alprazolam tablets in their prescription bottle, "it would have been like a big bag, and I didn't want to take it all out any time that I was going to take something." The physical evidence, however, was not consistent with this explanation. Appellant's hydrocodone and alprazolam tablets were spread among three containers—a hydrocodone prescription bottle, a zolpidem tartrate bottle, and a mint tin. Thus, appellant was storing the medication in a way that increased the total number of containers. Moreover, each of appellant's prescription bottles contained only one kind of medication. The hydrocodone bottle contained only hydrocodone, and one of the zolpidem tartrate bottles contained only zolpidem tartrate, but the second bottle labeled for zolpidem tartrate contained only alprazolam. Appellant did not explain why she would have transferred a nearly full bottle of alprazolam into an empty zolpidem tartrate bottle.

On this record, a rational jury properly could have disbelieved appellant's testimony that she obtained the alprazolam in her possession pursuant to a valid prescription, and instead could have found appellant guilty of the charged offense beyond a reasonable doubt.

We overrule appellant's second issue.

## IV. CONCLUSION

Because the evidence supports appellant's convictions for driving while intoxicated and possession of less than twenty-eight grams of a substance in Penalty Group 3, we affirm the trial court's judgments of conviction.

/s/    Tracy Christopher
        Justice

Panel consists of Justices Christopher, Bourliot, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).